HENRY J. DIXON, administrator, *vs.* A. J. CUNNINGHAM
COMPANY.

HENRY J. DIXON, administrator, *vs.* SAME.

JOS. KOWALSKI, administrator, *vs.* SAME.

HENRY J. DIXON, administrator, *vs.* SAME.

STACIA LAWANDOSKI *vs.* SAME.

WALTER SMOLENSKI *vs.* SAME.

JOHN LAWANDOSKI *vs.* SAME.

Suffolk.    March 11, 1926. — September 17, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Practice, Civil,* New trial.  *Jury and Jurors.*  *Evidence,* Expert: opinion;
Relating to deliberation by jurors; Competency.

The mere facts, that seven actions of tort, after their trial together during
a period of two weeks, were submitted to a jury at half past twelve
o'clock on an afternoon and were considered by the jury continuously
in one room without beds or sleeping accommodations until about
twenty minutes past eleven o'clock on the next forenoon, with the
exception of time for meals and a short walk, do not as a matter of law
require the allowance, after verdicts for the defendant, of motions by
the plaintiffs for a new trial, nor render the disallowance of such motions
an abuse of judicial discretion.

*Whether* the propriety of the action by the trial judge in keeping the jury
in session properly could be raised by exceptions to requests for rulings
at the hearing of the motions, or *whether* the exceptions should have been
taken before the recording of the verdicts, was not determined.

Questions as to the illness of a juror during deliberations of the jury after a
case has been submitted to them and its effect on him and his capacity
to act as a juror, and as to the propriety of continuing the jury's de-
liberations in the circumstances are for determination by the trial judge
in the exercise of his discretion; and, where it appears that, when noti-
fied of the illness of the juror, the judge had him examined by a physi-
cian, who reported him able to continue consideration of the case, that
the judge then found him to be so able, that neither party, upon being
informed of the circumstances, expressed a willingness to have the
deliberations of the jury go forward with eleven jurors only or made a
suggestion that a mistrial then be declared by reason of the juror's ill-
ness, and that a verdict afterwards was recorded for the defendant
without objection on the part of the plaintiff, a denial of a motion for
a new trial based on the ground of the juror's illness cannot be said
as a matter of law to have shown an abuse of judicial discretion.

Failure by a trial judge to discharge a jury from consideration of a case was *held* not to constitute a violation of G. L. c. 234, § 34, where it appeared that the jury received the case at 12:30 P.M. on one day and, with intermissions for meals and a short walk only, continued their deliberations until 11:20 the next morning; that shortly after 8 A.M. and at 9:45 A.M. the foreman asked the officer in charge to notify the judge that the jury could not agree; that such notice was given to the trial judge when he arrived at the court house at about 9:45 A.M.; that at about 10:20 A.M. the court officer again was notified by the foreman that the jury could not agree and the notification was communicated to the trial judge; that at no time did the jury return to the court room; that, after conferences between the judge and counsel for the parties, the deliberations of the jury were not interrupted; and that the jury finally reached a verdict which was returned at 11:20 A.M.

The mere fact that a member of the jury considering the cases in the circumstances above described asked a court officer how long they were to stay out and was told, "Until you agree, I expect," did not entitle the plaintiffs to a new trial as a matter of right.

Irregularities during a jury trial cannot always be prevented, and, where there is no intentional wrong and no certain injury to the cause of justice, a fair trial need not be declared void because of an irregularity; on such a point much must be left to the investigation and conclusion of the trial judge.

The refusal by the trial judge to accede to a request, transmitted to him by the jury during the deliberations above described, for a microscope or magnifying glass did not as a matter of law require the allowance of the motions for a new trial nor render their denial an abuse of judicial discretion.

Affidavits by several jurors touching what took place in the jury room and the motives, inducements, principles and reasons which moved them and their fellows to a verdict properly were excluded at the hearing of the motions for a new trial above described.

TORT for personal injuries and death resulting from the eating of cooked pork infected with trichinae alleged to have been sold to Mary Lewandowski by the defendant. Writs in the first three actions dated May 12, 1922; in the fourth action dated January 17, 1923; and in the last three actions dated March 10, 1923.

In the Superior Court, the actions were tried together before *Whiting*, J., the trial covering the period from October 14 to October 29, 1924, the jury receiving the cases at 12:30 P.M. on October 28 and returning their verdict at 11:20 A.M. on October 29. Special questions were propounded to the jury which, with the jury's answers thereto, were as follows:

"1. Did the plaintiff suffer or die from trichinosis obtained from pork?" The jury answered, "Yes."

"2. If the jury's answer to 1 is 'yes,' was the pork containing the trichinae bought from the defendant?" The jury answered, "No."

The jury found for the defendant in each action. The plaintiffs each moved that the general verdict and the answer to the second question be set aside and a new trial granted on the following grounds, among others:

"3. The jury was required or permitted to deliberate twenty-three hours without rest and sleep and were not fit mentally or physically to render a true, considered and deliberate verdict.

"4. No beds or other sleeping accommodations were provided for any of the jurymen and they were kept in a jury room of the court house over night for twenty-three hours except for meal times and a short walk in the morning and were therefore unable to render a true, considered and deliberate verdict by reason of mental and physical exhaustion and fatigue.

"5. One of the jury men suffered from indigestion and heart trouble. A doctor was called to attend him and he was required or permitted to remain and consider the case. He was allowed no rest or sleep for twenty-three hours and was therefore not mentally or physically fit to participate in the rendering of a true, considered and deliberate verdict.

"6. The effect of the knowledge that one of their number required medical treatment and was without sleep or rest for twenty-three hours had a tendency to affect the deliberations of the other members of the jury and to prevent them from rendering a true, considered and deliberate verdict.

"7. The jury notified the court that it could not agree three times within a period of about an hour previous to their notification that they had agreed, and therefore it appears that any verdict rendered thereafter was not a true, considered and deliberate verdict."

"10. During the trial the jury was allowed to use a magnifying glass provided by the counsel for the defendant and in the course of their deliberations requested that a magnify-

ing glass be furnished them for their use, but that no magnifying glass was furnished them."

"12. The officer or officers in charge of the jury stated to the foreman of the jury and to other jurymen, one or more times, that the jury would not be discharged until they agreed upon a verdict."

The record stated: "The jury were not brought into court at 10 A.M. on October 29. Shortly after 8 A.M., and at 9:45 A.M., the foreman told the officer to notify the court that they could not agree and, when the court arrived at about 9:45 A.M., he was so notified by an officer. At about 10:20 A.M. the officer was again notified by the foreman that they could not agree, and he communicated this to the court."

The following questions were asked by the plaintiffs, at the hearing of the motions for a new trial, in cross-examination of the physician who, at the request of the trial judge, examined the sick juror as described in the opinion: Q. "Now does the fact that a man is sick have any relation to his mental alertness?" Q. "Does the length of time that a man, who was as sick as this man was when you saw him, is obliged to stay in a jury room with the lights on, where there is discussion amongst the other jurors, and where there is smoking, have any relation to his mental alertness? Having in mind that he arose say that morning sometime before eight and remained with the jury until sometime after eleven, would that in your opinion have any effect upon the man's mental alertness?" Q. "Will you assume, doctor, that twelve men arising sometime between six and eight serving on the jury, after having been some fifteen days on trial, and in apparent good health up to the time they go out to consider the case, go out sometime around twelve or a little after —"

The counsel was interrupted during the asking of the last question and all the questions were excluded subject to exceptions by the plaintiffs, the trial judge refusing to go "into any such thing as that."

The plaintiffs asked for the following rulings:

"1. If the case was given to the jury about 12:30 P.M., and if the jury remained in continuous session until about

11:20 A.M. on the following day, and if no beds or other sleeping accommodations were provided for any of the jurymen, and if they were kept continually in a jury room except for the time required for dinner, supper and breakfast, and if the jury notified the officer sometime after midnight that they could not agree, and asked him to so state to the court, and if the jury three times after breakfast between eight o'clock and about eleven o'clock stated that they could not agree and asked him to so report to the court; and if he so reported to the court one or more times, and if no reply was given to the jury until after they agreed at or about eleven o'clock, a new trial should be granted.

"2. If in addition to the facts assumed in the above request one of the jurymen suffered from indigestion and heart trouble, vomited two or three times, was attended by a doctor, and thereafter sat propped up in a chair at an open window unable to take any part in the deliberations other than to vote, at times gasping for breath, having had nothing for supper except a cup of tea, having eaten very little at breakfast, a new trial should be granted.

"3. If in addition to the facts assumed in requests numbered one and two, one of the court officers on the way back from supper or on the way to supper stated in reply to a query from a juryman as to how long they would have to stay, that they had the evidence and would have to stay until they agreed, and if another court officer later in the morning when the jury said that they had disagreed, stated to the jury that they would have to agree or that they would have to stay until they agreed, a new trial should be granted.

"4. If in addition to the facts assumed in requests one, two and three, the jury was permitted the use of a magnifying glass during the trial, and if after the jury had commenced their deliberations, and while in the course of said deliberations the jury requested the use of a magnifying glass, and if no magnifying glass was furnished to the jury, and if the court knew of this request, a new trial should be granted."

The rulings were refused and the motions were denied. The trial judge, on the question of the communications by the judge to the officer and to his findings, found as follows:

"that I remained at the court house until after 11 P.M. and on leaving gave the officer instructions where he could get me if I was needed, and to keep the jury until they agreed or until I returned in the morning; that during the night the jury informed the officer that they could not agree; that about 9:30 A.M. the jury informed the officer again that they could not agree; that at meal time one of the jury asked an officer how long they were to stay out and the answer of the officer was 'until you agree, I expect,' that upon the coming in of the court the next morning counsel were called to the lobby and I suggested sending for the jury and ordering a verdict for the defendant, so that the various legal questions raised at the trial might be disposed of; that one of the counsel for the plaintiffs objected to this procedure and desired the jury be kept out longer so that a verdict might be obtained; that other counsel for the plaintiffs made no objection to this; that nothing was done at that time about discharging the jury; that at about 10:30 A.M. the officer notified me that the jury could not agree; that as soon as I saw an opportune time to suspend the case on trial I called counsel to the bench, told them of the report of the officer and said I would send for the jury, take such verdicts as had been agreed on and then discharge them from further consideration of the case unless it appeared that they had reached an agreement on most of the matters before them, in which event I would send them out for further consideration; that no objection was made to this procedure; that the officer in accordance with my instructions then went back to the jury room to bring the jury down; that they reported to him that they had agreed and would be down as soon as the verdicts were signed; that shortly after that the jury returned with the questions answered and the verdicts made out; that they were recorded in the usual manner in open court in the presence of all counsel by the clerk without objection; that the officers in charge of the jury performed their duties properly while the jury were considering the cases."

Among other findings by the judge as to the sick juror were the findings "as a fact that the sick juror was able to

consider the case; that I had the clerk notify counsel, who were not present, of the sickness and to inquire whether they would agree to a verdict of eleven men if it became necessary to excuse the sick juror; that each counsel wanted to know which juror was sick, and on not being informed did not express a willingness to go on with eleven men and no such arrangement was entered into; that no suggestion was made by any counsel that a mistrial be ordered because of the sickness of the juror."

The plaintiffs alleged exceptions.

G. L. c. 234, § 34, reads as follows:

"If a jury, after due and thorough deliberation, return to court without having agreed on a verdict, the court may state anew the evidence or any part thereof, explain to them anew the law applicable to the case and send them out for further deliberation; but if they return a second time without having agreed on a verdict, they shall not be sent out again without their own consent, unless they ask from the court some further explanation of the law."

*J. J. Cummings,* (*J. W. Vaughan* with him,) for the plaintiffs.

*S. L. Bailen,* for the defendant.

RUGG, C.J.   These exceptions relate to the denial of motions for a new trial.

It is the general rule that the disposition of a motion for a new trial commonly rests in sound judicial discretion. *Commonwealth* v. *Russ,* 232 Mass. 58, 82.   *Davis* v. *Boston Elevated Railway,* 235 Mass. 482, 495–497.   *Matter of Sleeper,* 251 Mass. 6, 22.   There is nothing in the present record which makes the cases at bar exceptional in that respect.

It is urged that, because the cases were given to the jury about half past twelve o'clock in the afternoon of October 28 and were considered continuously with the exception of time for meals and a short walk until about twenty minutes past eleven o'clock of the following forenoon, a period of almost twenty-three hours, when verdicts were returned in favor of the defendants, the verdicts ought to be set aside because rendered by tired and exhausted men.   It is doubtful whether this question can be raised on a motion for a new

trial and whether it ought not to be raised by exception taken before verdict. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 24. *Lonergan* v. *American Railway Express Co.* 250 Mass. 30, 38, 39. But we assume in favor of the plaintiffs that it is open to them. There was no error in the length of time for which the jury was required to consider the cases. That lies in the sound judicial discretion of the trial court. There is nothing to indicate abuse of that discretion in the cases at bar. *Commonwealth* v. *Bowden,* 9 Mass. 494. *Commonwealth* v. *Purchase,* 2 Pick. 521. *Commonwealth* v. *Roby,* 12 Pick. 496, 502. *Commonwealth* v. *Townsend,* 5 Allen, 216. *Commonwealth* v. *Sholes,* 13 Allen, 554, 556. See *Commonwealth* v. *McCormick,* 130 Mass. 61, 62; *Commonwealth* v. *Cody,* 165 Mass. 133, 136; *Edwards* v. *Worcester,* 172 Mass. 104, 105; *Highland Foundry Co.* v. *New York, New Haven & Hartford Railroad,* 199 Mass. 403, 409.

During the deliberations of the jury, one juryman complained of being sick from indigestion and heart trouble. The judge sent for a physician and instructed him under appropriate conditions to attend the ailing juror and to advise whether he was able to continue further consideration of the case. The physician reported to the judge that the juror had substantially recovered and could in his opinion continue further consideration of the case. An officer in charge of the jury inquired thereafter about once an hour during the remainder of the night whether the juror was able to go on, and was told that he was. The judge found as a fact upon all the evidence that the juror was able to perform his duty. In all this there was no error. The hypothetical question to the physician on cross-examination at the hearing on the motions for new trial was rightly excluded. Questions as to the illness of a juror and its effect on him and on his capacity to act as a juror were for the trial judge to determine. *Hubbard* v. *Gale,* 105 Mass. 511. *Nichols* v. *Nichols,* 136 Mass. 256.

There was no violation of G. L. c. 234, § 34, to the effect that, if a jury after due and thorough deliberation return to court a second time without having agreed upon a verdict, they shall not be sent out again without their own consent,

unless they ask for some further explanation of the law. It is too clear for discussion that the mere statement to the officer in charge that they could not agree was not a foundation for the application of this statute. The jury in fact returned to court only once and then to declare their verdicts.

One juror asked a court officer how long they were to stay out and was told, "Until you agree, I expect." This incident did not entitle the plaintiffs to a new trial as matter of right. Irregularities during a jury trial cannot always be prevented, and where there is no intentional wrong and no certain injury to the cause of justice, a fair trial need not be declared void because of an irregularity. On such a point much must be left to the investigation and conclusion of the trial judge. *Leach* v. *Wilbur,* 9 Allen, 212. *Nichols* v. *Nichols, supra.*

There is nothing in the argument that the failure to send a microscope or magnifying glass to the jury on its request required a new trial as matter of law. The disposition of such a request during the deliberations of the jury rested in the sound discretion of the court. The denial was no error. *Burghardt* v. *Van Deusen,* 4 Allen, 374. *Boston Dairy Co.* v. *Mulliken,* 175 Mass. 447.

Reception of affidavits by several jurors touching what took place in the jury room and the motives, inducements, principles and reasons which moved them and their fellows to a verdict was rightly refused. This point is too well settled to warrant further elucidation. *Woodward* v. *Leavitt,* 107 Mass. 453. *Simmons* v. *Fish,* 210 Mass. 563, 571. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 386, 387. The deliberations of a jury room cannot be thus invaded.

All the points argued by the plaintiffs have been decided. It is not necessary to consider whether their conduct at the trial does not also prevent them from taking advantage of several of them.

*Exceptions overruled.*