COMMONWEALTH *vs.* COLEMAN P. HARRISON.

Suffolk. November 12, 1974. — January 14, 1975.

Present: HALE, C.J., ROSE, KEVILLE, GRANT, & ARMSTRONG, JJ.

*Practice, Criminal,* Examination of jurors. *Jury and Jurors. Evidence,* Relating to deliberation by jurors.

Prior to a defendant's trial for kicking a police officer and taking his revolver during a protest demonstration at a welfare office, the judge did not abuse his discretion by denying the defendant's motion to have each juror asked certain questions aimed at determining whether he had any prejudice against young people, demonstrators, or welfare recipients, or prejudice in favor of police officers. [778-779]

Even though a juror reported to the trial judge that a criminal defendant was called a "Communist" and a "bum" by some jurors during and after their deliberation, the defendant was not entitled to a new trial on the ground that some jurors gave false answers to voir dire questions concerning prejudice posed to them at the time of impaneling. [779-781]

INDICTMENTS found and returned in the Superior Court on June 16, 1971.

The cases were tried before *Dwyer*, J.

*William P. Homans, Jr.,* for the defendant.

*William A. Doherty,* Assistant District Attorney, for the Commonwealth.

HALE, C. J.   The defendant, having been indicted for armed robbery and for assault and battery by means of a dangerous weapon (a shoe), was convicted by a jury of larceny from the person and assault and battery.   There was evidence that between 11:00 A.M. and 12:00 noon on May 7, 1971, a group of from 150 to 200 persons gathered on or near the steps of the Roxbury Crossing welfare office.   While this crowd was thus gathered a disturbance took place during which the defendant and another person kicked a police officer who was stationed at the door of the welfare office.   The defendant took the officer's revolver and stuck it in his (the defendant's) waistband.

Prior to the impaneling of the jury the defendant filed a motion, supported by an affidavit of his counsel, seeking permission to ask the veniremen individually seventeen questions or, alternatively, that the judge examine the prospective jurors individually in accordance with those questions.   The judge ruled that questions one, two, ten, and the substance of question three would be put to the venire collectively.   This was done.[1]   The judge also asked the substance of the so-called statutory questions (G. L. c. 234, § 28, prior to the amendment

---

[1] "1. Are you related to or are you acquainted with Carroll S. Dorgan, Coleman P. Harrison, James T. Kilbreth, Walter H. G. Huber, Anthony C. Krock, Eric L. Prahl, Stephen W. Raudenbush, Robert M. Schwartz, Jay Ian Sargeant, Captain Joseph J. Cummings, Commanding Officer, Police District 2, or Patrolman Thomas Matthews?

"2. Are you acquainted with either the attorneys for the defendant or the attorneys for the Commonwealth?

"3. Have you heard of or read of or otherwise observed through the media, including radio, television and newspapers, of events which took place in and around the area of the Roxbury Crossing Welfare Office at Tremont Street, Boston, Massachusetts on or about May 7, 1971, involving a protest relating to Medicaid, welfare and similar matters, or arrests or charges being brought in connection with such protest and the events surrounding it?

"10. Do you have any close relatives who are policemen or law enforcement officers?"

effected by St. 1973, c. 919).[2] The defendant excepted to the judge's refusal to ask the other requested questions.[3] As a result of the questions put to the veniremen, three were excused upon their responses to question ten, one was excused because he had restricted police powers, and one was excused because of an affirmative answer to question one. A sixth venireman responded that he had an uncle who was a police officer, but the defendant did not challenge for cause after the venireman answered, upon questioning by the defendant's attorney, that he

---

[2] "Do any of you have an interest in this case, or have you expressed or formed an opinion relative to the innocence or guilt of the defendant, or anyone else connected with this indictment?

"Are you conscious or aware of any bias or prejudice for or against either the Commonwealth or Coleman P. Harrison, the defendant?

"And finally, are you satisfied that you can afford to this defendant, a fair trial based upon the evidence which is produced in this court and this court alone?"

[3] "7. Are you aware of any feelings you have of hostility toward persons who engage in peaceful protest of activities carried on by the State or by the Federal Government or by any of their subdivisions or agencies?

"8. In the event a person is found by you to have engaged in protest of activities by the State or Federal Government or their agencies or subdivisions, do you believe it more likely that that person might have engaged in a crime than a person who is not engaged in such protests?

"9. Do you believe that the testimony of a policeman or other law enforcement officer should be given greater credence as compared to the testimony of another witness, merely because of his status as a policeman or other law enforcement officer?

"11. Do you have any acquaintances who are policemen or law enforcement officers?

"12. If the answer to question number 10 [*sic*] is in the affirmative, please state the extent of your acquaintance with such policemen or law enforcement officers.

"13. Are you, by reason of your acquaintance with policemen or law enforcement officers, more likely to believe such persons than you are to believe such persons who are not policemen or law enforcement officers?

"14. Do you believe that persons who engage in peaceful protest of activities of the State or Federal Government or subdivision thereof are unpatriotic?

would not believe the testimony of a policeman over that of another person, solely because he was a policeman.

1. We first consider the defendant's exception to the partial denial of his motion under G. L. c. 234, § 28, for the judge to ask or allow the attorney to ask questions enumerated in the motion (see nn. 1 and 3), and we do so, as we must, in the light of the facts before the judge at the time he made his ruling.

The defendant argues that the affidavit filed in support of his motion for voir dire questions shows that he anticipated the prejudice of the prospective jurors against young people who engage in protest demonstrations,[4] and he contends that the judge erred in denying his motion.

The judge was informed that the charges upon which the defendant was to be tried arose out of a demonstration at a welfare office, and he was asked to inquire specifically of the jurors whether they might have any hostility towards persons who engage in protests or towards persons who receive welfare or Medicaid, or whether they might believe that such protestors would be more likely to commit crime. There was no suggestion to the judge that any anti-communist feelings of the veniremen might be injected into the case. That matter

---

"15. Are you aware of any feelings of hostility which would influence you in this case toward the welfare system or Medicaid system?

"16. Do you believe that youthful persons, purely because of their youth, have less right to make judgments on Federal and State activities than do older persons?

"17. Are you able to decide the issues in the case before you on the evidence before you and only upon that evidence, without reference to any opinions you may have formed for or against peaceful protest, for or against the welfare system, for or against Medicaid, and for or against the activities of young persons in the last several years?"

Questions four, five, and six would come into play only in the event of an affirmative answer to question number three. The record does not disclose whether there were any such affirmative answers.

[4] Compare *United States* v. *Dellinger,* 472 F. 2d 340, 368-369 (7th Cir. 1972), cert. den. 410 U. S. 970 (1973).

only surfaced during the course of the trial when certain photographic exhibits, introduced by the defendant, showed some of the protestors carrying red flags and signs which could have suggested to the jury that some of the demonstrators had communistic leanings. Furthermore, the affidavit of the defendant's counsel in support of his motion, like that in *Commonwealth* v. *Pinckney,* 365 Mass. 70, 74 (1974), amounted to no more than an argument of law intended to persuade the court to adopt the defendant's position on the utility of the requested questions and in no way informed the judge as to the possible injection into the case of prejudice stemming from possibly disparate political views or cultural values.

It is a well established rule in this Commonwealth that it lies within the sound discretion of the trial judge whether to ask questions beyond the minima prescribed by G. L. c. 234, § 28. *Commonwealth* v. *Pinckney,* 365 Mass. 70, 72-73 (1974).[5]

For the reasons stated, we are of the opinion that the judge did not abuse his discretion in refusing to ask the proffered questions.[6]

2. Six days after the jury returned verdicts, one of the jurors approached the judge and told him that during the

---

[5] This discretionary power is limited by the Fourteenth Amendment, see *Ham* v. *South Carolina,* 409 U. S. 524, 526-527 (1973), and *Commonwealth* v. *Ross,* 363 Mass. 665, 671-672 (1973). The defendant does not argue that his situation comes within the rule in those cases.

[6] While we do not depart from the established law with respect to the judge's discretion, we note that such discretion is not unlimited and that the judge has the serious responsibility of addressing special questions to the venire concerning particular biases and prejudices which might intrude into the trial of a case. We particularly note the caution to that effect in *Commonwealth* v. *Bumpus,* 365 Mass. 66, 70 (1974). The directions of the amendment to G. L. c. 234, § 28, which were effected by St. 1973, c. 919, should also be noted. Compare the discussion in Note, Exploring Racial Prejudice on Voir Dire: Constitutional Requirements and Policy Considerations, 54 B. U. L. Rev. 394, 418-423 (1974).

deliberations a fellow juror had said that the defendant was a "Communist" and that the judge "should hang the whole bunch of them, for what they were doing." He also said that another juror had referred to the defendant as a "bum." The reporting juror also related to the judge that "today, upstairs in the jurors' room" the foreman told him that after the case had been "deliberated" a juror had said that the defendant was a "Communist." The judge made a transcript of his conference with the reporting juror available to counsel. Thereafter sentence was imposed.

Following sentencing the defendant filed a motion for a new trial. He assigned as grounds for that motion "that the defendant was prejudiced in his defense by the denial of his motion under G. L. c. 234, § 28, for order that his attorney be permitted to examine on oath persons called as jurors under the direction of this Court or, in the alternative, that the Court examine on oath such persons and that the statements of the reporting juror demonstrated the prejudice to which the defendant was subjected in his defense by the denial of said motion." The motion was denied, and the defendant excepted to its denial.

The defendant disavows any attempt to impeach the jury's verdict, recognizing that the mandate of *Woodward* v. *Leavitt,* 107 Mass. 453, 460-462 (1871), is still the law of this Commonwealth. *Dixon* v. *A. J. Cunningham Co.* 257 Mass. 63, 71 (1926). Compare *Miller* v. *United States,* 403 F. 2d 77, 83, n. 11 (2d Cir. 1968). However, he appears to contend that he has demonstrated that false answers were given by some of the prospective jurors to the voir dire questions posed by the judge concerning prejudice, in light of the reporting juror's statements, and that the verdict of the jury is therefore a nullity and a new trial should have been granted. In support of this contention he cites *Clark* v. *United States,* 289 U. S. 1, 13-14, 18-19 (1933); *People* v. *Castaldia,* 51 Cal. 2d 569, 572-573 (1959); and *People* v.

*Leonti,* 262 N. Y. 256, 258 (1933).[7]  In each of those cases, however, it was in fact demonstrated that the juror had returned false answers to voir dire questions prior to his selection as a juror.

While the cases relied upon by the defendant illustrate that an exception exists in some jurisdictions to the general rule expressed in *Woodward* v. *Leavitt,* 107 Mass. 453 (1871), that the deliberations of the jury are inviolable, we do not consider the facts of this case to come within any such possible exception.  Even if we were to consider that such evidence might be used in the manner urged by the defendant, no showing has been made that the judge believed the reporting juror,[8] nor was there any indication in the statements of the reporting juror, assuming them to be true, that those jurors whose remarks were reported harbored such views at the time of impaneling as to demonstrate the existence at that time of any bias or prejudice which would have required an affirmative answer to any of the judge's voir dire questions.

It is within the sound discretion of the trial judge whether to allow or deny a motion for a new trial (see *Commonwealth* v. *Stout,* 356 Mass. 237, 242-243 [1969]; *Commonwealth* v. *Cassesso,* 360 Mass. 570, 575 [1971]), and we discern no abuse of that discretion in denying the defendant's motion in this case.

*Exceptions overruled.*

---

[7] The case of *Commonwealth* v. *Cornitcher,* 447 Pa. 539, 550-552 (1972), cited by the defendant, while indicating that in certain circumstances the presence of a biased or prejudiced juror denies the defendant his right to an impartial jury, decided no more than a procedural question whether the defendant had waived his rights to review under a State statute regulating post conviction hearings.

[8] Nothing in the record indicates that the judge was asked to make such a finding.