COMMONWEALTH *vs.* COLEMAN P. HARRISON.

Suffolk.    May 5, 1975. — July 16, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Examination of jurors. *Jury and Jurors.    Evidence,* Relating to deliberation by jurors.

At the commencement of a trial for armed robbery and assault and battery on a police officer occurring during a demonstration against welfare and Medicaid policies, no violation of the Massachusetts Constitution or the United States Constitution was shown by reason of the denial of the defendant's motion under G. L. c. 234, § 28, that prospective jurors be individually asked questions going further in particularizing the questions as to interest or bias or prejudice which the judge asked the prospective jurors collectively; the affidavit of the defendant's counsel did not portray a situation requiring at voir dire an extraordinary quiz of prospective jurors; nor was any occasion presented for overriding on any nonconstitutional ground the judge's exercise of discretion. [368-374]

There was no error in denial of a motion for a new trial of a de-
fendant convicted of larceny and assault and battery on a police
officer occurring during a demonstration against welfare and Med-
icaid policies, based on a report to the trial judge by a juror,
five days after the jury had rendered their verdicts and had been
discharged, of statements by jurors which allegedly lent weight to
the defendant's contention of error in the denial of his motion for
questions to prospective jurors as to bias or prejudice in addition
to questions asked by the judge at voir dire [374-375]; the juror's
report did not indicate any unmistakable, material and knowing
falsehood by any juror then made which undermined the verdicts
[375-376].

INDICTMENTS found and returned in the Superior Court
on June 16, 1971.

The cases were tried before *Dwyer*, J.

After review by the Appeals Court, the Supreme Judi-
cial Court granted leave to obtain further appellate re-
view.

*William P. Homans, Jr.*, for the defendant.

*William A. Doherty*, Assistant District Attorney, for the
Commonwealth.

KAPLAN, J.  On May 7, 1971, some 150 to 200 persons
met outside the Roxbury Crossing welfare office to
demonstrate against welfare and Medicaid policies.  A
number of police officers were present.  There was a
scuffle between some of the demonstrators and the police,
the details of which remain rather obscure in the ab-
breviated record before us.  As a result of the encounter,
one of the group, the defendant Coleman P. Harrison,
was indicted for armed robbery (taking a service revolver
out of the possession of Officer Thomas Matthews with
the threat of a knife) and assault and battery by means of
a dangerous weapon (kicking Officer Matthews).[1]  After

---

[1] Eight other men — Carroll S. Dorgan, James T. Kilberth, Walter
H. G. Huber, Anthony C. Krock, Eric L. Prahl, Stephen W. Raun-
denbush, Robert M. Schwartz, and Jay Ian Sargeant — were also
indicted for assault and battery by means of a dangerous weapon.
All but Huber pleaded guilty to simply assault and battery, and re-
ceived two years' probation.  Their cases are not before us.  Huber

trial in the Suffolk Superior Court, the defendant was convicted by a jury of the lesser included offenses of larceny from the person and simple assault and battery.[2] Sentence on the larceny conviction was six months in a house of correction, suspended, with three years' probation; there was a like sentence on the assault conviction, to run concurrently.

On a substitute bill of exceptions to the Appeals Court, the defendant raised only the points that the trial judge committed error in denying, in part, a motion with respect to the conduct of the voir dire examination of prospective jurors, and in denying also a motion, after trial and verdict, for a new trial. The Appeals Court overruled the exceptions. *Commonwealth* v. *Harrison,* 2 Mass. App. Ct. 775 (1975). On the defendant's application, we granted further review. G. L. c. 211A, § 11. We agree with the Appeals Court.

1. *Motion at voir dire.* At commencement of trial, the defendant's counsel moved under G. L. c. 234, § 28, as it then stood,[3] for an order that he be permitted to put seventeen questions to the prospective jurors individually; in the alternative, counsel asked the judge to put these questions.

---

defaulted and apparently has not been apprehended, though a warrant has been issued.

[2] According to the bill of exceptions, the evidence for the Commonwealth tended to show that the defendant "was observed sticking the gun of officer Matthews, who was on a paid detail at the building, in . . . [the defendant's] waistband; and that . . . [the defendant] and another individual . . . kicked Matthews."

[3] "Upon motion of either party, the court shall, or the parties or their attorneys may under the direction of the court, examine on oath a person who is called as a juror therein, to learn whether he is related to either party or has any interest in the case, or has expressed or formed an opinion, or is sensible of any bias or prejudice, therein; and the objecting party may introduce other competent evidence in support of the objection. If the court finds that the juror does not stand indifferent in the case, another shall be called in his stead."

A second paragraph was added to § 28 by St. 1973, c. 919. See fn. 13, *infra.*

An affidavit of counsel filed in support of the motion stated that "[t]he media, both newspapers and radio and television reported incidents of violence in connection with the gathering. The media also reported injuries to certain policemen. The newspapers reported that some of the participants were members of 'radical' political groups." The affidavit went on to say that "among a substantial proportion of the population there exists hostility toward young persons, especially those engaging in political protest." Counsel mentioned a few trials known to him where prospective jurors in response to particular questions had acknowledged biases which, in counsel's opinion, they would not have admitted in answer to questions of a more general character.

Of the seventeen questions proffered in the motion,[4] the judge accepted three:[5] whether the prospective jurors were relatives of or acquainted with named police officers, or relatives of any policemen or law enforcement officers, or acquainted with the attorneys in the case. He also undertook to put the substance of a fourth question inquiring what the prospective jurors had learned through the news media about the episode in Roxbury on May 7 involving a protest against Medicaid, welfare, and other matters, and arrests or charges connected therewith. Questions refused by the judge asked whether the prospective jurors were aware of feelings of hostility toward persons engaged in peaceful protest of governmental activities, or believed those persons to be unpatriotic or more likely to commit crimes than persons

---

[4] Besides the seventeen questions, the defendant's motion requested "in addition, if the answers to such questions or any of them indicate that a juror might possibly be sensible of bias or prejudice, that further exploratory questions be asked."

The main proposed questions are set out verbatim in the opinion of the Appeals Court. *Commonwealth* v. *Harrison,* 2 Mass. App. Ct. 775, 776, fn. 1, 777-778, fn. 3 (1975).

[5] The judge put his questions to the prospective jurors collectively rather than individually.

not so engaged; whether they were aware of feelings of hostility toward the welfare or Medicaid system; whether they believed youthful persons had less right to make judgments on governmental activities than other persons; whether they believed the testimony of police officers should by reason of their status be given greater credence than the testimony of others.[6]

Although refusing the questions mentioned, the judge put questions (mostly deriving from § 28) as to whether the prospective jurors had an interest in the case or had expressed or formed an opinion about the guilt or innocence of the defendant or anyone else connected with the indictments; whether they were conscious of any bias or prejudice for or against the defendant or the Commonwealth; and whether they were satisfied they could afford the defendant a fair trial basing their decisions solely on the evidence produced in court.[7]

We should add that in the course of trial the judge again cautioned the jury that they were to reach their verdict on the evidence presented in court, and that only. In his charge to the jury (to which no exception was taken), the judge, besides warning against bias, said that the case involved only particular criminal charges, that no political or social philosophy was on trial; that the merit or lack of it of the welfare system was not on trial, nor the validity of anyone's protest; that the appearance of anyone, whether short or long haired, clean shaven or bearded, was not the issue.

---

[6] As to the latter question, compare *Commonwealth* v. *Stewart*, 359 Mass. 671, 677 (1971), judgment vacated as to death penalty, 408 U. S. 845 (1972).

[7] Three prospective jurors were excused for having relatives on the police force; one for having restricted police powers; and one because he knew one of the named police officers. A sixth stated that he had an uncle on the police force but the defendant did not challenge him when, in response to a question asked by the defendant's counsel with the court's permission, he said he would not believe the testimony of a policeman solely because of his status. The defendant exhausted his peremptory challenges.

The defendant argues that in the judge's denial (in part) of the voir dire motion there was error amounting to deprivation of the constitutional right to an impartial jury. The error, if there was one, could lie only in the judge's declining to go further in particularizing or making specific the questions as to interest or bias or prejudice that he did ask. Traditionally we have held that it is within the wide discretion of the trial judge whether to refine or improve on the subjects of G. L. c. 234, § 28, by going into more detail. See, e.g., *Commonwealth* v. *Lee,* 324 Mass. 714, 717-718 (1949); *Commonwealth* v. *Bonomi,* 335 Mass. 327, 334-335 (1957); *Commonwealth* v. *Geagan,* 339 Mass. 487, 504 (1959), cert. den. 361 U. S. 895 (1959); *Commonwealth* v. *Kudish,* 362 Mass. 627, 632 (1972). Cf. *United States* v. *Malinowski,* 347 F. Supp. 347 (E. D. Pa. 1972), affd. 472 F. 2d 850 (3d Cir. 1973), cert. den. 411 U. S. 970 (1973). "If trial by jury is not to break down by its own weight, it is not feasible to probe more than the upper levels of a juror's mind." L. Hand, J., in *United States* v. *Dennis,* 183 F. 2d 201, 227 (2d Cir. 1950), affd. on other grounds, 341 U. S. 494 (1951). We have been content to allow the trial judge a fair leeway in deciding how deep the probe should go, having in view the nature of the case as the judge apprehends it at the start.

It is true that in *Ham* v. *South Carolina,* 409 U. S. 524 (1973), the Supreme Court decided, in a case involving a black activist who claimed to have been framed by the police, that questions addressed simply to prejudice were not constitutionally sufficient, that the jurors must be asked in one way or another whether they were conscious of racial prejudice. Just how exacerbated a situation must be in order to raise this right under the Constitution is still a matter of debate.[8] However, it is clear that the

---

[8] The difference of opinion is brought out by the following sequence of decisions: *Commonwealth* v. *Ross,* 361 Mass. 665 (1972), judgment

court saw a difference between racial prejudice and other kinds of possible bias — for example a bias against bearded men, the defendant in the *Ham* case being such a man. The court said, "The inquiry as to racial prejudice derives its constitutional stature from the firmly established precedent of *Aldridge* [v. *United States,* 283 U. S. 308 (1931)][9] and the numerous state cases upon which it relied, and from a principal purpose as well as from the language of those who adopted the Fourteenth Amendment." 409 U. S. at 528. In holding that, so far as the Constitution was concerned, the prospective jurors need not be questioned about prejudice against bearded men, the court said: "Given the traditionally broad discretion accorded to the trial judge in conducting *voir dire* . . . and our inability to constitutionally distinguish possible prejudice against beards from a host of other possible similar prejudices, we do not believe the petitioner's constitutional rights were violated when the trial judge refused to put this question. . . . The trial judge's refusal to inquire as to particular bias against beards, after his inquiries as to bias in general, does not reach the level of a constitutional violation." *Ibid.*

It may be that the States are constitutionally free or nearly so to allow their trial judges their "traditionally broad discretion" when the claimed bias does not relate to race but to other matters. But assuming that the *Ham* case could find its counterpart in some strong case in a field outside race,[10] we do not think counsel's slim

---

vacated, 410 U. S. 901 (1973), affd. on rehearing, 363 Mass. 665 (1973), cert. den. 414 U. S. 1080 (1973) (with dissents), grant of habeas corpus affd. sub nom. *Ross* v. *Ristaino,* 508 F. 2d 754 (1st Cir. 1974), cert. granted, 421 U. S. 987 (1975). Compare *Commonwealth* v. *Lumley,* 367 Mass. 213 (1975), with *Dukes* v. *Waitkevitch,* No. 74-4376T U. S. District Court (D. Mass.), decided May 7, 1975.

[9] The *Aldridge* case had required interrogation by a Federal trial court about racial prejudice, but the decision was not placed on constitutional grounds.

[10] See *Commonwealth* v. *Bumpus,* 365 Mass. 66, 70 (1974).

affidavit — which, as the Appeals Court indicated, was less a statement of facts than a piece of legal argumentation [11] — portrayed a situation of such dimensions or exigency or so fraught with appeals to unreason as to require at voir dire an extraordinary quiz of prospective jurors as a constitutional right.[12] The case was perhaps stronger than one concerned with beards, but it was closer to beards than to problems of race. The logic of the collection of possible biases to which the proposed questions spoke could suggest for this case, and for many others, a still larger mélange of biases and a multiplication of questions in which the constitutional thread would be hard indeed to follow. We conclude that there was no violation of the State or Federal Constitution in the present case, nor do we see any occasion for overriding the judge's exercise of discretion on any nonconstitutional ground. This is not to say that the judge would have been wrong, had he chosen to go further in adopting questions tendered by the defendant; and a recent amendment of § 28 [13] will for the future lend encourage-

---

[11] Cf. *Commonwealth* v. *Pinckney,* 365 Mass. 70, 74 (1974).

[12] Compare the much more compelling situations presented in *Morford* v. *United States,* 339 U. S. 258 (1950) (interrogation of prospective government employee jurors on voir dire as to influence of "Loyalty Order" — prosecution for refusal to produce documents before House Committee on Un-American Activities), and *United States* v. *Dellinger,* 472 F. 2d 340, 366-370 (7th Cir. 1972), cert. den. 410 U. S. 970 (1973) (interrogation of prospective jurors on voir dire in prosecution of the "Chicago conspirators" under the Federal Anti-Riot Act). See *United States* v. *Malinowski,* 347 F. Supp. 347 (E. D. Pa. 1972), affd. 472 F. 2d 850 (3d Cir. 1973), cert. den. 411 U. S. 970 (1973).

[13] The second paragraph of § 28, inserted by St. 1973, c. 919, is as follows: "For the purpose of determining whether a juror stands indifferent in the case, if it appears that, as a result of the impact of considerations which may cause a decision or decisions to be made in whole or in part upon issues extraneous to the case, including, but not limited to, community attitudes, possible exposure to potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons, the juror may not stand in-

ment to judges' taking such a course on defendants' requests in cases of doubt. Cf. *Commonwealth* v. *Lumley*, 367 Mass. 213, 216-217 (1975).

2. *Motion for a new trial.* Five days after the jury had rendered their verdicts and been discharged, one of the jurors had an interview with the trial judge. He reported that while the jury were considering their verdicts, one juror said the defendant was a communist and the judge should hang the whole bunch of them (presumably the demonstrators) for what they were doing; another juror, trying to persuade the reporting juror how to vote, said the defendant was just a "bum." Also, the foreman said he, the foreman, had been approached after the jury deliberations by a third juror who called the defendant a communist. Reminded by the judge that he had joined in the guilty verdicts, the reporting juror said he still had a question whether the defendant was guilty.

On the basis of the report, the defendant moved for a new trial, which the judge denied after hearing. That decision so far as it rested in discretion is of course entitled to respect. Independently considered, it seems correct. The defendant expressly disclaims any effort to use the reporting juror's statement to "impeach the verdict," presumably by showing that one or more jurors were influenced by considerations extraneous to the evidence, and in this connection he accepts as relevant and does not challenge those decisions which have barred testimony of jurors about jury misconduct. See *Woodward* v. *Leavitt*, 107 Mass. 453, 458-471 (1871); *Com-*

different, the court may, or the parties or their attorneys may, with the permission and under the direction of the court, examine the juror specifically with respect to such considerations, attitudes, exposure, opinions or any other matters which may, as aforesaid, cause a decision or decisions to be made in whole or in part upon issues extraneous to the issues in the case. Such examination may include a brief statement of the facts of the case, to the extent the facts are appropriate and relevant to the issues of such examination, and shall be conducted individually and outside the presence of other persons about to be called as jurors or already called."

*monwealth* v. *Meserve,* 156 Mass. 61, 62 (1892); *Dixon* v. *A. J. Cunningham Co.* 257 Mass. 63, 71 (1926); anno. 58 A. L. R. 2d 556 (1958). Cf. A. B. A. Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury, § 5.7 (Approved Draft 1968); Federal Rules of Evidence, Rule 606, 28 U. S. C. App. (Supp. V, 1975). The precise ground of the motion for a new trial was that the juror's report lent weight to the original contention that the proposed questions should have been asked at voir dire. However, the obvious reasons of policy, which put a damper on the use of jurors' testimony to impeach a verdict, would seem to inhibit as well the use of such testimony for the purpose here suggested by the defendant. We may add that among the defendant's seventeen questions none mentioned communism; the only connection came during trial when pictures of the May 7 gathering showed a display of red flags. There must be some limit to the use of matters not thought of at voir dire to prove that the trial judge made a mistake at that time. If later events could be taken into account, one might point to the fact that the jury were apparently not runaway or overborne by passion; they convicted of the lesser offenses.

Departing from the reason assigned in his motion for a new trial, the defendant now suggests that the juror's report indicates that one or more jurors swore falsely at voir dire when they said or implied, in response to the judge's question on the point, that they were not biased against the defendant, and by that falsehood — so the defendant argues — instantly disqualified themselves as jurors, thereby voiding any subsequent verdict in which they participated. Assuming, but only for purposes of argument, the proposition that a juror's statement that would not be received to impeach the verdict could nevertheless be received to disqualify a juror, and the further proposition that a false statement by a juror at voir dire automatically renders him a nonjuror and undermines the verdict, we think the defendant is not helped.

It would surely be required that the falsehood be not only unmistakable but material and knowing. But a juror who at the close of trial might think that the defendant should be convicted because he was a communist or a "bum," might quite conscientiously have believed himself free of prejudice at voir dire. Cases cited by the defendant hardly go as far as his argument would require. See *Clark* v. *United States,* 289 U. S. 1 (1933); *People* v. *Castaldia,* 51 Cal. 2d 569 (1959); *State* v. *Levitt,* 36 N. J. 266 (1961); *People* v. *Leonti,* 262 N. Y. 256 (1933), affd. 266 N. Y. 409 (1934); *Commonwealth* v. *Cornitcher,* 447 Pa. 539 (1972).

*Exceptions overruled.*