## COMMONWEALTH *vs.* FELIPE DE LA CRUZ.

Worcester. April 5, 1989. — July 3, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Indecent Assault and Battery. Jury and Jurors. Practice, Criminal*, Examination of jurors, Instructions to jury. *Evidence*, Other offense.

This court declined to exercise its supervisory power to extend the statutory policy set forth in G.L. c. 234, § 28, to require that trial judges in criminal cases make individual inquiry of prospective jurors with respect to bias against Hispanic persons. [273-274] LIACOS, C.J., concurring, would announce, for prospective application, a rule requiring individual voir dire in certain cases where there has been a threshold showing of potential bias due to ethnic disparity.

In a criminal case in which the defendant, an Hispanic male, was charged with a sexual assault on a white child, no substantial risk of the empanelment of biased jurors was demonstrated by the judge's declining to conduct an individual voir dire of prospective jurors and instead posing a question to the venire as a group with respect to possible bias against Hispanic persons. [274] LIACOS, C.J., concurring.

No substantial risk of a miscarriage of justice was shown in a criminal case by reason of the judge's unobjected-to instruction as to the use the jury could make of certain properly admissible evidence of the defendant's having committed criminal acts, with which he was not charged, on the same occasion as the acts for which he was indicted. [274-276]

INDICTMENT found and returned in the Superior Court Department on July 10, 1985.

The case was tried before *Herbert F. Travers, Jr.*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Eric Brandt*, Committee for Public Counsel Services, for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant was indicted, and tried by a jury, for unnatural sexual intercourse with a child under the age

of sixteen in violation of G. L. c. 265, § 23 (1986 ed.), and for indecent assault and battery of a child under the age of fourteen in violation of G. L. c. 265, § 13B (1986 ed.). The jury acquitted the defendant of the first charge, but convicted him of indecent assault and battery of a child under fourteen. The defendant appealed, and we allowed his petition for direct appellate review. We affirm the conviction.

The defendant is a fifty-eight year old Hispanic male. The alleged victim, a white girl, was eight years old at the time of the incident. According to the alleged victim's testimony, on the day of the incident, she saw the defendant coming out of an apartment building which contained a family unit and an elderly unit. The alleged victim and her twelve year old friend went with the defendant into the laundry room of the family unit. The three sat on chairs around a table. The defendant touched the alleged victim's friend underneath her pants. He then touched the alleged victim underneath her pants inside her "private spot," with his finger. The defendant then took out his "private spot" and "peed on the rug." After that, the defendant gave each girl a dollar. The girls walked to a nearby store where they bought some candy.

Prior to trial, the defendant moved for individual voir dire of prospective jurors to determine whether they would be affected by any bias or prejudice. Three questions requested by the defendant to be put to the individual jurors focused on bias against Hispanic persons. Defense counsel's request for individual voir dire was based on the difference in age between the defendant and the alleged victim, their different "ethnic backgrounds," and the nature of the allegations. The judge denied the request for individual voir dire. Instead, he posed one question to the venire as a group: "[A]re there any of you that have any prejudice for or against Hispanic people? For example, have any of you had some bad experience or particularly good experience involving an Hispanic person that you believe might affect you as a juror in this case; what is your answer?" The question elicited no response.

On appeal, the defendant contends that the judge's refusal to conduct individual voir dire of prospective jurors concerning

their possible bias against Hispanic persons was reversible error. The defendant's contention is not based on the Federal or State Constitution, but rather on an alleged violation of G. L. c. 234, § 28 (1986 ed.). The Commonwealth argues that defense counsel's request, focusing on differences in "ethnic backgrounds," as distinguished from racial differences, was not sufficient to preserve the individual voir dire question for appellate review. We disagree with that contention. We are content that the defendant adequately preserved his rights. See *Commonwealth* v. *Susi,* 394 Mass. 784, 788 n.3 (1985) (defendant made judge aware that prospective juror held cane and needed assistance into jury box, and thereby adequately raised issue of exclusion of blind juror despite failure to request voir dire regarding extent of juror's visual impairment).

Rule 20 (b) (2) of Massachusetts Rules of Criminal Procedure, 378 Mass. 889 (1979) states: "The court shall examine or cause a juror to be examined upon issues extraneous to the case if it appears that the juror's impartiality may have been affected by the extraneous issues." General Laws c. 234, § 28, states similarly: "Upon motion of either party, the court shall, or the parties or their attorneys may under the direction of the court, examine on oath a person who is called as a juror therein, to learn whether he [or she] . . . has expressed or formed an opinion, or is sensible of any bias or prejudice, therein . . . . For the purpose of determining whether a juror stands indifferent in the case, if it appears that, as a result of the impact of considerations which may cause a decision or decisions to be made in whole or in part upon issues extraneous to the case, including, but not limited to . . . community attitudes . . . or possible preconceived opinions toward the credibility of certain classes of persons, the juror may not stand indifferent, the court shall . . . examine the juror specifically with respect to such considerations, attitudes [or] . . . opinions . . . which may . . . cause a decision or decisions to be made in whole or in part upon issues extraneous to the issues in the case. Such examination . . . shall be conducted individually and outside the presence of other persons about to be called as jurors or already called."

We stated in *Commonwealth* v. *Sanders*, 383 Mass. 637, 640-641 (1981), that, in cases of interracial rape, prospective jurors must be interrogated individually in accordance with the statute, rather than as a group because, as a matter of law, "interracial rape cases present a substantial risk that extraneous issues will influence the jury." In *Commonwealth* v. *Hobbs*, 385 Mass. 863, 873 (1982), we extended the *Sanders* rule to the interracial assault and sexual abuse of a child. We extended the rule as to interracial murder in *Commonwealth* v. *Young*, 401 Mass. 390, 398 (1987). In each case, we held that the trial judge must question each juror individually, out of the hearing of the venire, about possible racial bias and prejudice. These decisions rested not on constitutional grounds but, rather, on our superintendency power to implement the statutory policy set forth in G. L. c. 234, § 28. *Commonwealth* v. *Young*, *supra* at 398 n.8. We have clearly stated that cases involving a black defendant and white victim, *Commonwealth* v. *Sanders*, *supra*; *Commonwealth* v. *Hobbs*, *supra*, or a black defendant and Hispanic victim, *Commonwealth* v. *Young*, *supra*, are "interracial." The issue before us now is whether sexual assault of a white child by an Hispanic defendant is an "interracial" crime and, if not technically so, whether nevertheless it should be treated that way. The result would be to extend the *Sanders* rule to this case.

The word, "race," has historically referred to any of the three primary divisions of humanity as distinguished by skin color: Caucasian, Mongolian, and Negro. Webster's New World Dictionary 352 (1970). *Id*. at 69, 278, 288. Thus, this case involves a defendant and an alleged victim of different ethnic backgrounds, not of different races in the traditional sense. The word, "Hispanic," ordinarily refers, not to race, but to national origin. See *Commonwealth* v. *Aponte*, 391 Mass. 494, 509 (1984). The term, "Hispanic," may refer to persons with various national origins, such as Puerto Rican, Mexican, Cuban, and Spanish, *id*. at 495 n.3.

The defendant argues that, regardless of the traditional meaning of the word "race," this court in *Commonwealth* v. *Young* settled the question whether, for jury empanelment purposes,

an alleged sexual assault of a white child by an Hispanic defendant is "interracial." *Young* involved the alleged murder of a person of Hispanic origin by a black defendant. The trial judge denied the defendant's motion for individual voir dire of the venire. We held that the judge had acted in accordance with the law as it existed at the time of the trial, *id.* at 400, and therefore we affirmed the conviction, *id.* at 407, but we announced that, "for the future, we [were] expand[ing] the principle we [had] stated in *Sanders* and *Hobbs* and shall require that a trial judge 'must make [individual inquiry directed to the discovery of racial prejudice] when requested by a defendant accused of [murder] and where the defendant and the victim are members of different racial . . . groups.'" *Id.* at 398, quoting *Rosales-Lopez* v. *United States*, 451 U.S. 182, 192 (1981). The defendant argues that the clear import of the *Young* opinion was that henceforth Hispanic persons are to be viewed as a race for jury empanelment purposes. He argues that there was no suggestion in the *Young* opinion that the court viewed the crime as interracial because the defendant was black and the victim was white. Rather, he says, the court's conclusion that the crime was interracial appears to have been based on the defendant's being a member of the "black race" and the victim's being a member of the "Hispanic race." In support of this contention, the defendant points out that the defendant in *Young* only argued that the victim was Hispanic, not that he was white.

Our opinion in *Young* surely implies that Hispanic persons are not members of the black (Negro) race. However, the opinion cannot fairly be read as concluding that Hispanic persons constitute a separate race. The opinion is just as consistent with Hispanic persons being viewed as members of the white race, and therefore not black. The *Young* case is not authority for the proposition that a crime allegedly committed by an Hispanic defendant against a white victim is interracial.

The question whether, in a particular case, it appears that a jury decision may be based upon extraneous issues such as community attitudes or preconceived opinions about the credibility of certain groups of people, is ordinarily best determined

by the judge on the scene. In the exercise of our supervisory power, we have imposed our judgment in a limited class of "interracial" cases where we were satisfied that the possibility of a verdict influenced by prejudice was so substantial that a rule affecting all such cases was required, but we are disinclined to expand that rule in the absence of demonstrated necessity. We are not satisfied that a necessity has been demonstrated for a rule that would treat Hispanic persons as a race for jury empanelment purposes. Instead, we continue to adhere to our statement in *Young, supra* at 398 n.8, that, while "a broader rule applying to all 'crimes of violence' and to 'ethnic,' as well as racial, groups [exists in the Federal courts], we feel that we should adhere to the basic precepts set forth in *Sanders.*" Except where the defendant and the alleged victim are clearly members of different races in the traditional sense, we think that the judge on the scene ordinarily is in the best position to determine whether justice and the appearance thereof are best served by individual voir dire of potential jurors.

Nothing we say is designed to discourage judges in the exercise of sound discretion from granting individual voir dire of prospective jurors relative to possible or perceived prejudice when a defendant requests such inquiry. See *Rosales-Lopez* v. *United States, supra* at 191; *Commonwealth* v. *Sanders, supra* at 639. To the contrary, when requested, we encourage individual voir dire as to possible juror prejudice based on ethnic considerations. *Commonwealth* v. *Lumley,* 367 Mass. 213, 216 (1975). However, failure to honor such a request will be reversible error only when a "substantial risk" of bias has been shown. *Commonwealth* v. *Hobbs, supra* at 873. *Commonwealth* v. *Shelley,* 381 Mass. 340, 352-353 (1980). We are content that there was no showing of a "substantial risk" of bias in this case.

In this case, the defendant makes a second argument, unrelated to empanelment of the jury, to which we now turn. At trial, the prosecutor elicited testimony from the alleged victim that the defendant had first put his hand underneath her friend's pants. Defense counsel objected. The judge overruled the objection and gave the jury a limiting instruction. Defense counsel

did not object to the limiting instruction. On appeal, the defendant concedes that the alleged victim's testimony about what the defendant had done to her friend was admissible. However, he challenges the adequacy of the limiting instruction. A timely objection would have given the judge an opportunity to correct any error. *Commonwealth* v. *Reid*, 384 Mass. 247, 258 (1981). In the absence of a timely objection, our review is limited to whether there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Silva*, 401 Mass. 318, 329 (1987). *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

The judge's limiting instruction was as follows: "Ladies and gentlemen, as I told you before the case started, the defendant is presumed to be innocent, and the burden is upon the Commonwealth to prove his guilt for the charges that are on trial beyond a reasonable doubt.

"Now, apparently from this question, you are going to hear some evidence of actions that could be looked at as crimes not charged here. Now, of course, you have a right, or rather the Commonwealth has a right, to introduce all of the evidence of what occurred on a particular occasion. But you should keep in mind that you can consider evidence that may suggest that some other crime was committed as it bears on the crimes that are charged here. But you should not consider them for any other purpose. You should only consider what happened here as bearing upon whether or not the Commonwealth establishes beyond a reasonable doubt that the defendant committed these crimes."

The defendant argues that, in instructing the jury that they could consider the evidence relative to the alleged victim's friend "as it bears on" the crime charged, the judge was effectively saying that they could consider the evidence "without limitation, and apparently in any way that the jury deemed relevant." According to the defendant's argument, the instruction created a danger that "the jury would misuse the evidence to conclude that the defendant had a propensity to commit sexual crimes against children." In such circumstances, "a jury might be led to dispense with proof beyond a reasonable doubt that [the defendant] did actually commit the crime charged."

*Commonwealth* v. *Stone*, 321 Mass. 471, 473 (1947). See McCormick, Evidence § 188 (3d ed. 1984).

We think it is unlikely that the jury would have understood the instruction to mean that the evidence permitted them to conclude that the defendant had a predisposition to commit the crimes with which he was charged, or that they could use the evidence for any purpose other than a proper one, that is, to appreciate the total circumstances in which the alleged crimes occurred. That, apparently, was the view of defense counsel, whose silence evinced his satisfaction with the instruction. No substantial risk of a miscarriage of justice has been shown.

*Judgment affirmed.*


LIACOS, C.J. (concurring). People's prejudices do not, as the court seems to suggest, neatly fit into categories formulated by Webster's Dictionary. By refusing to extend the rule of *Commonwealth* v. *Sanders*, 383 Mass. 637 (1981), to cases of sexual abuse involving Hispanic and non-Hispanic persons, the court today needlessly disregards social reality.

Nothing in the statute at issue, G. L. c. 234, § 28 (1986 ed.), requires us to limit the voir dire requirement to racial prejudice. Rather, it provides that "if it appears that . . . the juror may not stand indifferent" because of, among other things, "*community attitudes* . . . or possible preconceived opinions toward the credibility of *certain classes of persons* . . . the court shall . . . examine the juror specifically with respect to such considerations, attitudes, exposure, opinions or any other matters" (emphasis added). *Id.* The statute includes within its scope prejudices against identifiable classes of individuals, including Hispanic persons.

We need not determine whether Hispanics comprise a racial, rather than an ethnic, group. We have recognized previously, under the Declaration of Rights of the Constitution of the Commonwealth, the threat that bias toward ethnic groups presents to a fair trial. See *Commonwealth* v. *Soares*, 377 Mass. 461, 488-489 & n.33, cert. denied, 444 U.S. 881 (1979); art.

1 of the Declaration of Rights, as amended by art. 106 of the Amendments to the Massachusetts Constitution. See also *Commonwealth* v. *Aponte*, 391 Mass. 494 (1984) (grand jury selection).

I would take judicial notice of the unfortunate prevalence of prejudice against Hispanics in our Commonwealth. See *Commonwealth* v. *Jones*, 9 Mass. App. Ct. 103, 121 (1980) (Brown, J., concurring); P.J. Liacos, Massachusetts Evidence 29-34 (5th ed. 1981 & Supp. 1985), and cases cited. See also *Rosales-Lopez* v. *United States*, 451 U.S. 182, 192 (1981). It is true that we must take a cautious approach in extending the *Sanders* principle. See *Commonwealth* v. *Young*, 401 Mass. 390, 398 n.8 (1987). But we should not shy away from exercising our superintendency powers to prevent prejudice against Hispanics from contaminating criminal trials.

The indictments in this case involved charges of unnatural sexual intercourse with a child under the age of sixteen (G. L. c. 265, § 23 [1986 ed.]) and indecent assault and battery of a child under the age of fourteen (G. L. c. 265, § 13B [1986 ed.]). Such charges are peculiarly apt to raise prejudice against a defendant, especially one of a different race or ethnic background from that of the alleged victim. See *Commonwealth* v. *Hobbs*, 385 Mass. 863, 873 (1982). I would require an individual voir dire in such cases where there has been a threshold showing of potential bias due to ethnic disparity. Because I would apply this rule prospectively, see *Commonwealth* v. *Hobbs*, *supra*, I concur in the result of this case.