## COMMONWEALTH *vs.* JOSE RAMOS, JR.

No. 90-P-532.

Suffolk. June 14, 1991. - September 12, 1991.

Present: KASS, FINE, & GREENBERG, JJ.

*Jury and Jurors. Practice, Criminal,* Examination of jurors, Instructions
to jury, Verdict. *Joint Enterprise. Witness,* Credibility.

In the circumstances of a criminal case, the record did not support the
defendant's contention that racial differences between the defendant
and the victim required the judge to examine the prospective jurors in-
dividually about racial bias, when so requested by defense counsel.
[363-366]
In the circumstances of a criminal case arising from one stabbing incident
in which the defendant was alleged to have been the principal or alter-
natively, a joint venturer, the defendant was not entitled to have the
jury instructed that, for a finding of guilty, they must reach a unani-
mous verdict on one theory or the other, where the shared mental state
of the defendant and his accomplice at the time of the stabbing made
irrelevant the precise theory on which the defendant was convicted.
[366-368]
At a criminal trial, the judge's instructions on the credibility of witnesses
were correct. [368-369]

INDICTMENT found and returned in the Superior Court De-
partment on February 10, 1988.

The case was tried before *Sandra L. Hamlin,* J.

*M. Page Kelley,* Committee for Public Counsel Services,
for the defendant.

*Jane A. Sullivan,* Assistant District Attorney, for the
Commonwealth.

KASS, J. Our principal concern in considering the defend-
ant's appeal is whether the circumstances of the crime for
which he was charged were so likely to release the venom of
racial prejudice that the trial judge ought to have examined
prospective jurors individually about racial bias, as requested
by defense counsel. See G. L. c. 234, § 28; Mass.R.Crim.P.

20(b)(2), 378 Mass. 890 (1979). We conclude that the background against which the offense was committed did not so obviously produce a racially charged atmosphere as to require an individual voir dire and we affirm the judgment. We shall comment on two lesser points which the defendant has raised on appeal.

Jose Ramos, Jr., was convicted by a jury of assault and battery by means of a dangerous weapon and acquitted of a charge of assault with intent to murder. The crime was an unprovoked stabbing of Andrew Lubatty, who was simply walking home on a public street (Dartmouth Street in Boston) with three friends after sharing dinner at a local restaurant on a Saturday evening. Before the stabbing occurred, Ramos had "bumped" Lubatty and asked him repeatedly, "What are you doing?" To that Lubatty had replied, "Nothing; everything is fine," and had sought to disengage.

Now anxious, Lubatty and his friends, another man and two women, continued on their way. Very shortly thereafter, they realized a "group of people" or a "number of people," variously described as six to fifteen, were running towards them. At the head of the pack was a man in a fur coat, the same man involved in the "bumping" incident, who cried, "Get him." The foursome tried to flee, but Ramos caught Lubatty between parked cars, stabbed him twice in the back with a knife, and was winding up for a third thrust when one of the women managed to pull Lubatty away and the four found sanctuary in another restaurant, Claddagh's. Lubatty and his friends are white; the defendant and a youth — he was tried as a juvenile — who participated actively in the knifing of Lubatty were described varyingly as dark-skinned and light-skinned Hispanics.

1. *Individual examination of prospective jurors.* In the generality of cases, it is for the judge to decide whether the case to be tried is likely to generate extraneous influences alluded to in G. L. c. 234, § 28, such as racial bias. *Commonwealth* v. *Shelley*, 381 Mass. 340, 352-353 (1980). *Commonwealth* v. *Sanders*, 383 Mass. 637, 639-640 (1981). *Commonwealth* v. *Hobbs*, 385 Mass. 863, 873 (1882). *Com-*

monwealth v. *Grice*, 410 Mass. 586, 588 (1991). *Commonwealth* v. *Jones*, 9 Mass. App. Ct. 103, 114-115 (1980), *S.C.*, 382 Mass. 387 (1981). *Commonwealth* v. *Stephens*, 15 Mass. App. Ct. 461, 464 (1983). At the same time, appellate decisions have consistently encouraged trial judges to respond generously to motions that they question jurors individually about possible prejudice. See, e.g., *Commonwealth* v. *Lumley*, 367 Mass. 213, 216 (1975); *Commonwealth* v. *Sanders*, 383 Mass. at 639; *Commonwealth* v. *De La Cruz*, 405 Mass. 269, 274 (1989) (encourages individual voir dire as to possible prejudice based on ethnic considerations). That which is desirable and wise, however, may not necessarily be required as matter of law.

Beginning with the *Sanders* case, the court began to establish a select category of cases in which racial bias infection of the jury venire was so distinct a possibility that the judge would be compelled to examine jurors individually to see if the capacity of any to render a disinterested verdict had been affected. So, in *Sanders*, interracial rape was stated to be a crime so likely to trigger racial bias that a judge ought to conduct individual voir dires of potential jurors. *Commonwealth* v. *Hobbs*, 385 Mass. at 873, extended the requirement to interracial assault and sexual abuse of a child. In *Commonwealth* v. *Young*, 401 Mass. 390, 398-399 (1987), interracial murder was identified as a circumstance in which racial feelings would inevitably crop up. Acts of sex and violence between members of different races were placed in the "requiring individual voir dires" category in *Commonwealth* v. *Stephens*, 15 Mass. App. Ct. at 465.[1]

---

[1]Requiring individual voir dire in certain cases to implement the statutory purpose of G. L. c. 234, § 28, has been an exercise of the Supreme Judicial Court's power of "general superintendence of all courts of inferior jurisdiction to correct and prevent errors," G. L. c. 211, § 3, as amended through St. 1973, c. 1114, § 44, rather than the consequence of any constitutional requirement. *Commonwealth* v. *Young*, 401 Mass. at 398. *Commonwealth* v. *De La Cruz*, 405 Mass. at 272. *Commonwealth* v. *Grice*, 410 Mass. at 589 n. 5. We think it our duty, as we did in *Stephens*, to consider circumstances in which the *Sanders* rule might apply, i.e., to fill the interstices of opinions of the Supreme Judicial Court on the subject.

We return to the case before us. Seen in its most dramatic light, there had occurred an unprovoked attack by a gang of dark skinned people upon four white people innocently walking the streets. As there had been no attempt at robbery, the speculation naturally arises that this was a nasty racial incident, in which the victim came within an ace of a fatal wound. If so, it would be an apt occasion for application of the *Sanders* principle. A gang attack by members of one racial group against members of another race is redolent with racial antagonism. That is what the crime is all about and it surely is an occasion to inquire of jurors whether racial feelings would affect the way they listened to and deliberated upon the case.

The difficulty for the defendant is that the record does not support such a view of the case. Of the racial composition of the defendant's group we know scarcely anything. It is likely that the group was Hispanic, but we cannot assume it, and Hispanic, as such, would not constitute a racial category for purposes of applying § 28 and the *Sanders* rule. *Commonwealth* v. *De La Cruz*, 405 Mass. at 272-274. As presented, the prosecution's case did not refer to a gang attack. Indeed, the word "gang" never came into play. There was reference to a "group" of young men who pursued the four whites with the assailants at their head; there was no direct reference by the prosecutor to the race or racial characteristics of the defendant. The jury, of course, could see the defendant. In the record, witnesses describe the defendant as: "Hispanic male 5'8"; "one is 5'8 with a multi-colored fur coat and a Yankee baseball cap on"; "a light skinned black male about 5'8 with a slight mustache, wearing a coat"; "5'8, light skinned black or Hispanic male"; "a light-skinned Hispanic male"; "light-skinned black or Hispanic male, slight build, mustache, short hair and late teens"; "the three kids looked Hispanic". The race of the defendant was, it seems, uncertain. Neither the testimony of witnesses nor — and we think this particularly important — the opening statement and closing argument of the prosecutor spoke of a gang attack or alluded to racial differences between the assailant and the victim. Compare

*Commonwealth* v. *Wolcott*, 28 Mass. App. Ct. 200, 210 (1990).

Taken all in all, the trial was racially neutral and we think the seepage of racial prejudice into the jury was unlikely. Of course, when the motion for an individual voir dire was made, the Superior Court judge had no way of knowing how the trial would play out. She would surely have been wiser to conduct the individual voir dire when asked so to do, but, with the luxury of the completed record before us, we are not prepared to characterize her refusal as reversible error. This is particularly so because all previous extensions of the *Sanders* rule have been prospectively applied.

2. *Specific unanimity instruction.* After the judge's charge to the jury, but before the jury retired to deliberate, defense counsel requested what has acquired the label of a "specific unanimity instruction," i.e., an instruction to the jury that if there are alternative sets of facts or episodes which support a finding of guilty, the jury must reach a unanimous verdict as to at least one of those specific sets of facts or episodes. See *Commonwealth* v. *Comtois*, 399 Mass. 668, 676-677 (1987); *Commonwealth* v. *Keevan*, 400 Mass. 557, 566-567 (1987); *Commonwealth* v. *Lemar*, 22 Mass. App. Ct. 170, 172-73 (1986). For example, if evidence of three different episodes of sexual abuse is offered to the jury, any one bundle of evidence being sufficient to support a guilty finding, the jury is to be instructed that they must be unanimous in their findings as to any specific bundle of facts; they may not mix nonunanimous findings about the several episodes to come up with a general verdict of guilty. *Id.* at 172. See also *United States* v. *Natelli*, 527 F.2d 311, 324-325 (2d Cir. 1975), cert. denied, 425 U.S. 934 (1976); *United States* v. *Gipson*, 553 F.2d 453, 458-459 (5th Cir. 1977); *United States* v. *Peterson*, 768 F.2d 64, 66-68 (2d Cir. 1985); *People* v. *Forbes*, 175 Cal. App. 3d 807, 816 (1985). *People* v. *Burns*, 196 Cal. App. 3d 1440, 1458 (1987), in which the court observed that

"a unanimity instruction is required only if the jurors could otherwise disagree which act a defendant commit-

ted and yet convict him of the crime charged . . . . The possibility of disagreement exists where the defendant is accused of a number of unrelated incidents, such as alleged rapes at different times or places, leaving the jurors free to believe different parts of the testimony and yet convict the defendant."

For purposes of decision, we can assume the defense adequately called to the trial judge's attention, conformably with Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979), that it wanted a specific unanimity instruction, and we consider whether the defendant was entitled to such an instruction. The colloquy during which defense counsel asked for a specific unanimity instruction is reproduced in the margin.[2] Compare *Commonwealth* v. *Reid*, 384 Mass. 247, 257-258 (1981), with *Commonwealth* v. *Matos*, 394 Mass. 563, 565 (1985).

Unlike those cases in which evidence of separate occurrences came before the jury, and a specific unanimity instruction was, therefore, indicated, in this case there was evidence of but one event. In the context of that event the jury had alternative theories upon which to find the defendant guilty: he stabbed Lubatty while his accomplice with the baseball cap held Lubatty down, or, the defendant held the victim down while the accomplice stabbed him. If the former were the scenario, the defendant would be guilty as a principal; if the latter, he would be guilty as a joint venturer.

Inherent in the idea of joint venture culpability is that the joint venturer, as an aiding and abetting party, shares the same mental state, and is as guilty as the principal who commits the crime. *Commonwealth* v. *Soares*, 377 Mass. 461, 470 (1979). *Commonwealth* v. *Cook*, 10 Mass. App. Ct. 668,

---

[2]DEFENSE COUNSEL: "I would also ask that you instruct the jury that when they reach a verdict, given that the Court, over my objection, had laid out several different theories of guilt, that they must agree on the theory and they must agree on the facts. They must find the facts unanimously and not find the defendant guilty under different theories."

THE COURT: "I don't understand what you mean by that."

DEFENSE COUNSEL: "For example, if half the jury thinks he was the principal and half the jury thinks he was a co-venturer, that they may not then find the defendant guilty with inconsistent findings of fact."

677 (1980). In either role, the defendant is a full participant and is chargeable as a principal. *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 498 n.9 (1991), and cases cited. It does not really matter on what basis the jury arrives at a finding of guilty. The jurors, to convict, must have found the defendant present at the stabbing and involved with it, at least by assisting. If five jurors thought the defendant actually wielded the knife, and seven jurors thought the defendant held the victim while his accomplice did the stabbing, the shared mental state tied together the defendant and his accomplice, making irrelevant who did what in the shared enterprise. Following that reasoning, courts have held that a specific unanimity verdict is not required when "a single charged offense is submitted to the jury on alternate theories of culpability . . . ." *People* v. *Forbes*, 175 Cal. App. 3d at 816. *People* v. *Burns*, 196 Cal. App. 3d 1440, 1458 (1987). *State* v. *Arndt*, 87 Wash. 2d 374, 376-379 (1976). *State* v. *Bockman*, 37 Wash. App. 474, 495 (1984). If a crime can be committed in several ways, the Supreme Court recently observed in a case in which the defendant claimed a constitutional right to a unanimous verdict on alternative theories of premeditated murder or felony murder, the jury need not agree on the precise mode of commission. *Schad* v. *Arizona*, 111 S.Ct. 2491 (1991). On the record in this case, there was not a requirement for a specific unanimity instruction.

3. *Instruction on credibility of witnesses.* Prior to the charge conference, the defense filed a motion requesting the judge to refrain from instructing the jury that, in assessing the credibility of a witness, they could consider the interest of the witness in the outcome of the case. The judge did not honor the request, and the point was preserved by defense counsel with a timely objection and request for correction at the close of the charge. There was no error. It is appropriate for a judge to mention that interest in the case is a criterion, along with others which the judge detailed, for assessing the credibility of witnesses. See *Commonwealth* v. *Perez*, 390 Mass. 308, 320 (1983). The judge did not, through wry comment or other device, offer her opinion of the credibility of

witnesses and did not (contrary to a contention of the defense) exempt government witnesses from appraisal of their credibility. Read in their entirety, the instructions on evaluating the credibility of witnesses were even-handed and correct.

*Judgment affirmed.*