## COMMONWEALTH *VS.* ALFRED J. HUNTER, THIRD.

Essex. March 3, 1998. - June 16, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & MARSHALL, JJ.

*Practice, Criminal,* Voir dire, Examination of jurors, Instructions to jury, Verdict, Jury and jurors, Capital case. *Jury and Jurors. Witness,* Expert. *Homicide.*

In a criminal case in which the defendant, a white male, was charged with the murder of his wife, who was a native of the Philippines, the judge did not err in declining to conduct an individual voir dire of prospective jurors regarding possible ethnic bias, where the defendant failed to demonstrate that there was a substantial risk that such a bias existed, and where potential bias was not a live issue at trial. [653-655]

At a criminal trial, no substantial likelihood of a miscarriage of justice was created by testimony of the prosecution's expert psychiatric witness that the defendant's courtroom demeanor was inconsistent with his asserted mental illness, where the only issue at trial was the defendant's sanity. [655-656]

At the trial of an indictment for first degree murder by reason of extreme atrocity or cruelty, the judge's instructions to the jury requiring that they consider the defendant's consciousness of and indifference to the victim's suffering were correct and were supported by the evidence. [656-657]

This court concluded that, at the trial of an indictment for murder in the first degree by reason of extreme atrocity or cruelty, the judge is not required to instruct the jury that they must agree unanimously on which of the *Cunneen* factors (*Commonwealth* v. *Cunneen*, 389 Mass. 216 [1983]) provides the basis for their verdict of extreme atrocity or cruelty. [657-658]

INDICTMENT found and returned in the Superior Court Department on January 24, 1990.

Following the decision of this court in 416 Mass. 831 (1994), the case was tried before *Barbara J. Rouse,* J.

*Ruth Greenberg* for the defendant.

*Nicole M. Procida,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Alfred J. Hunter, III, appeals from his conviction of murder in the first degree on the theories of

deliberate premeditation and extreme atrocity or cruelty.[1] At trial, the defendant admitted to killing his wife, Elvira Hunter, but denied criminal responsibility, claiming that he lacked the capacity to form the requisite mental state to commit the crime due to posttraumatic stress disorder (PTSD). On appeal, the defendant contends that (1) the judge erred in refusing to conduct an individual voir dire of members of the venire on the question of potential racial bias; (2) his State and Federal constitutional rights were violated when the Commonwealth elicited testimony from its psychiatric expert that the defendant's behavior at trial did not support the conclusion that the defendant suffered from mental illness; and (3) the judge erred in her instructions to the jury. The defendant also seeks relief pursuant to G. L. c. 278, § 33E. We affirm the conviction and decline to exercise our power under G. L. c. 278, § 33E, in favor of the defendant.

1. *Facts.* We set forth the facts in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with specific issues raised. See *Commonwealth* v. *Nichypor,* 419 Mass. 209, 210 (1994); *Commonwealth* v. *Salemme,* 395 Mass. 594, 595 (1985).

On May 9, 1989, the defendant went to his wife's apartment.[2] The couple's five year old son answered the door. The defendant sent the boy to his room. Loud arguing was overheard. The victim was then heard pleading, "Oh, please don't. Don't do it." Using a semiautomatic assault rifle, the defendant shot the victim, paused, and then shot her again. A neighbor found the victim and called police. She also discovered the couple's son. He told her, "My daddy just shot my mommy."

On arrival a few minutes after the shooting, the police found the victim's body lying face down in a pool of blood so substantial that the blood had seeped through the floor and pooled on the basement floor. The victim had seven gunshot wounds to the chest, head, and both wrists. She had been shot three times in the front of her body, and once in the temple as she lay on the floor. She was shot at close range and each of the

---

[1]The defendant was first convicted of murder in the first degree in 1992. We reversed that conviction and ordered a new trial. See *Commonwealth* v. *Hunter,* 416 Mass. 831 (1994). The defendant's current appeal is from his conviction of murder in the first degree at the second trial in 1995.

[2]The defendant and the victim were living separately at the time of the killing.

wounds to the head and torso was fatal. The wounds to her wrists were described as defensive-type wounds.

2. *Individual voir dire.* The defendant assigns error to the judge's refusal to conduct an individual voir dire on the issue of potential racial bias of prospective jurors. Relying on *Commonwealth* v. *Young*, 401 Mass. 390 (1987), the defendant contends that because this case involved an interracial murder,[3] he was entitled to the requested voir dire.

Prior to trial, the defendant moved that the judge conduct an individual voir dire of each prospective juror. In his written motion, the defendant requested that the judge ask, "The deceased was a woman and a native of the Philippines. The defendant is a Caucasian male. Do you have any feelings of bias or prejudice based on ethnicity or sex which could interfere with your ability to decide this case fairly and impartially?" At a pretrial conference, the judge denied the motion, concluding that there was nothing in the case to suggest that ethnic prejudice would affect the jurors and that individually inquiring about the matter ran the risk of injecting an extraneous matter into the trial.[4] See *Young, supra* at 398 n.8.

---

[3]The defendant is Caucasian. The victim was a native of the Philippines.

[4]The relevant portion of the discussion was as follows:

THE JUDGE: "Number six, I am not inclined to ask this, [defense counsel], but I will hear what you have to say about it, sir. If it is helpful for me to tell you what my thinking is, I think there are so many issues in this case that require the juror's attention. I don't find anything in here, in my review of the case file or anything in the case or what you have told me, that suggests there is any issue here of ethnicity. To suggest it by proposing a question, that seems to me to run the risk of injecting another issue into the case which really no one has indicated exists currently."

DEFENSE COUNSEL: "Your Honor, the only evidence that concerns me along those lines is there was evidence at the last trial that the defendant made a statement to the [p]robation [o]fficer that he saw at Salem District Court to the effect that: We were fighting the wrong enemy in Viet Nam. I don't know what to make of that statement, how it relates, if at all, to the ethnicity of the victim in this case.

"There is also a separate question that obviously has to do with gender. It is obvious in this case the defendant is a male and the victim is a female. But, frankly, given the public climate in our society of domestic violence, there may well be people that cannot be fair and impartial in a case where a man is accused of killing a woman."

THE JUDGE: "You are moving on to, I think, your issue on spousal abuse. I am really talking about your question number six in which you propose I inform the jurors that the deceased was a woman, which they will know

The defendant is correct that, in cases of interracial murder, a judge, if requested to do so, is required to conduct an individual voir dire on the issue of potential bias of prospective jurors. *Id.* at 398.[5] We have declined, however, to extend this rule to cases where the defendant and the victim are of different ethnic backgrounds. See *Commonwealth* v. *De La Cruz*, 405 Mass. 269, 272 (1989). Rather, in such cases, we have left the determination whether an individual voir dire is warranted to the sound discretion of the trial judge. *Id.* at 274. We will reverse a judge's failure to honor a request for individual voir dire based on ethnic considerations only when a "substantial risk" of bias has been shown. *Id.*

Here, the issue the defendant placed before the judge was ethnicity, not race. In his written request for voir dire the defendant asked the judge to ask about "feelings of bias or prejudice based on *ethnicity*" (emphasis supplied). The victim was a native of the Philippines. There was no evidence before the judge that the victim and the defendant were "clearly members of different races in the traditional sense." See *id.* at 274. That some members of the venire described the victim as "Asian" does not entitle the defendant, on the basis of the rule enunciated in *Young*, to an individual voir dire.

The defendant has not shown that a "substantial risk" of bias existed. In fact, during the bench conference discussing the

already."

DEFENSE COUNSEL: "Yes."

THE JUDGE: "And a native of the Philippines."

DEFENSE COUNSEL: "I guess that was not part of the evidence. So, I agree with your Honor. I don't recall the evidence to be that way."

[5]We established the rule in *Commonwealth* v. *Young*, 401 Mass. 390, 398 (1987), because we concluded that there was a substantial possibility that racial prejudice would affect a jury's verdict in murder cases where the defendant and the victim were of different races. See *Commonwealth* v. *De La Cruz*, 405 Mass. 269, 274 (1989). The rule is an extension of a similar rule for cases of interracial rape announced in *Commonwealth* v. *Sanders*, 383 Mass. 637, 640-641 (1981). The same rule also applies in cases of interracial assault and sexual abuse of a child. See *Commonwealth* v. *Hobbs*, 385 Mass. 863, 873 (1982). The *Sanders* rule is based on our superintendency powers to implement the statutory policy set forth in G. L. c. 234, § 28. See *De La Cruz, supra* at 272.

General Laws c. 234, § 28, requires an individual voir dire on request if it appears to the judge that because of "issues extraneous to the case, including but not limited to . . . community attitudes . . . or possible preconceived opinions toward the credibility of certain classes of persons, the juror may not stand indifferent."

defendant's request for individual voir dire, defendant's counsel conceded that potential bias was not a live issue. There was no error.

3. *Testimony concerning the defendant's behavior at trial.* The prosecution's expert psychiatric witness opined that the defendant sitting quietly while a short video depicting combat conditions in Vietnam was shown to the jury[6] was inconsistent with the defendant's claim that he suffered from PTSD.[7] The defendant contends that this testimony violated his State and Federal constitutional rights to remain silent. Because there was no objection at trial, we review for a substantial likelihood of a miscarriage of justice. There was no error.

"The jury may consider the defendant's courtroom demeanor when the defendant's sanity is an issue at trial." *Commonwealth v. Smiledge*, 419 Mass. 156, 160 (1994). Where the defendant's sanity is at issue, the prosecution may alert jurors to inconsistencies between the defendant's conduct at trial and his alleged mental illness. See *id*.

---

[6]The video was shown to the jurors by the defendant in conjunction with the testimony of the defendant's psychiatric expert. The challenged testimony was elicited by the Commonwealth during its rebuttal.

[7]The Commonwealth's expert testified:

*Q*: "Were you here the other day when a video was displayed concerning four minutes or so about Viet Nam?"

*A*: "Yes."

*Q*: "Did you make observations of the defendant at that time?"

*A*: "Yes."

*Q*: "What, if anything, did you observe, sir?"

*A*: "I didn't observe that there was a marked change in his behavior. He was not able to see it. It was behind him. It was facing you all. But there were gunshot wounds, gunshots and audio parts of it, and I didn't observe any particular change in his behavior during that period."

*Q*: "Was that significant to you, sir?"

*A*: "Well, it might have been. If he had a posttraumatic stress disorder, you might expect that he would have reacted rather strongly to that. Conceivably, he might not and have a posttraumatic stress disorder. But while I was sitting in the courtroom, since I couldn't see the video I looked at [the defendant] and I said I wonder what this is going to do to his behavior in terms of a psychiatrist just making some observations."

*Q*: "And, sir, does that change your opinion in any way?"

*A*: "No, it does not."

*Q*: "Does that confirm your opinion in any way?"

*A*: "It is more in the direction of confirming."

Here, the only issue at trial was the defendant's sanity. As in *Smiledge*, the prosecutor in this case did nothing more than ask the expert psychiatric witness whether the defendant's demeanor was consistent with the defendant's alleged psychiatric illness. In *Smiledge*, we held that "this question was merely an attempt to alert the jury to inconsistencies between the defendant's conduct at trial and his alleged mental disease, and therefore, the prosecutor's reference to the defendant's courtroom demeanor was not improper." *Id.* at 160.

4. *Jury instructions.* The defendant contends that the judge's instructions in regard to extreme atrocity or cruelty were flawed because the judge told the jurors that they were required to consider all the *Cunneen* factors.[8] See *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983). The judge refused to withdraw two of the factors from the jury's consideration. The defendant also assigns error to the judge's failure to instruct the jury that they were required to agree unanimously on which of the *Cunneen* factors supported a verdict under the theory of extreme atrocity or cruelty. There was no error.[9]

(a) The defendant first argues that because there was no evidence to support a determination that the defendant was indifferent to the victim's suffering or was conscious of it, these factors should have been withdrawn from the jury's consideration. The defendant asserts that, by requiring the jury to consider all the *Cunneen* factors, the judge impermissibly invaded the province of the jury, thus violating his right to a jury trial. We disagree.

The judge's instructions were a correct statement of law and the evidence supports the judge's instructions. The defendant shot the victim repeatedly at close range, using an assault weapon and armor piercing bullets. The defendant shot the victim in the head, after she had fallen to the floor as a result of his shots to her body. Before being shot, the victim pleaded

[8]Factors the jurors are to consider in determining whether a murder was committed with extreme atrocity or cruelty are: the defendant's indifference to or taking pleasure in the victim's suffering, consciousness and degree of suffering of the victim, extent of physical injuries, number of blows, manner and force with which they were delivered, instrument employed, and disproportion between the means needed to cause death and those employed. See *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983).

[9]Because we conclude that there was no error in the instructions regarding extreme atrocity or cruelty, we need not consider the defendant's claims regarding the judge's instructions on deliberate premeditation.

with the defendant for her life and tried to defend herself from the fatal attack. There was ample evidence for the jurors to consider the defendant's indifference to the victim's suffering and that the defendant was conscious of it.

(b) The defendant contends that it was error for the judge not to instruct the jury that they were required to agree unanimously on which of the *Cunneen* factors provided the basis for their verdict. The defendant acknowledges, as he must, that we have never required that the jury unanimously agree on which of the *Cunneen* factors underlie their verdict of extreme atrocity or cruelty. Nonetheless, relying on *Commonwealth* v. *Berry*, 420 Mass. 95 (1995), and *Commonwealth* v. *Conefrey*, 420 Mass. 508, 513 (1995), the defendant argues that because the *Cunneen* factors are either alternate theories of culpability, see *Berry, supra* at 112, or discrete acts, see *Conefrey, supra* at 514, he is entitled to the requested unanimity instruction. We reject the defendant's argument.

In *Berry*, we concluded that, as a matter of common law, when requested in a trial where the defendant has been charged with murder in the first degree, instructions to the jury that they must agree unanimously on the theory of culpability are required. *Id.* at 112. In that case we noted that the verdict in a criminal trial must be unanimous and that a defendant's due process rights require that the essential elements of the crime charged be proved beyond a reasonable doubt. *Id.* at 111. In *Conefrey*, relying on the same principles, we concluded that specific unanimity instructions were required, if requested, "where there is a significant likelihood that the conviction resulted from different jurors concluding that the defendant committed different acts, . . . to ensure that the jurors understood their duty unanimously to agree to a particular set of facts." *Id.* at 514. We noted in *Conefrey* that the rule requiring unanimous verdicts developed in the common law as a means to ensure that the government had met its constitutional duty to prove the defendant's guilt beyond a reasonable doubt. *Id.* at 512 n.7.

The defendant misunderstands the nature of the *Cunneen* factors. The *Cunneen* factors are not separate theories of culpability for murder in the first degree. Cf. *Berry, supra* at 112. Nor are the *Cunneen* factors discrete acts or incidents, each of which, independently, constitutes a crime. Cf. *Conefrey, supra* at 514. They are "evidentiary considerations" that guide the jury in

determining whether a murder was committed with extreme atrocity or cruelty. See *Commonwealth* v. *Jenner*, 426 Mass. 163, 166 (1997); *Commonwealth* v. *Semedo*, 422 Mass. 716, 725 (1996); *Commonwealth* v. *Freiberg*, 405 Mass. 282, 289, cert. denied, 493 U.S. 940 (1989). We discern no reason to extend the requirement of unanimity to the *Cunneen* factors. We have not required other evidentiary considerations to be unanimously determined by the jury. See *Commonwealth* v. *Watkins*, 425 Mass. 830, 836 (1997) (jury's determination that defendant's statement is voluntary need not be unanimous before the statement can be considered as evidence). We see no reason to treat the *Cunneen* factors differently. There was no error.

5. *Review pursuant to G. L. c. 278, § 33E.* We have reviewed the record and discern no basis for exercising our power under G. L. c. 278, § 33E, to grant relief.

*Judgment affirmed.*